UNITED STATES BANKRUPTCY COURT
MIDDLE DISTRICT OF LOUISIANA

IN RE:

**BRYAN J. WALKER**　　　　　　　　　　　　　　　　CASE NO. **09-10888**
**ANGELA J. WALKER**
DEBTORS　　　　　　　　　　　　　　　　　　　　　CHAPTER 7


**ELODIE BOSTWICK**
PLAINTIFF

V.　　　　　　　　　　　　　　　　　　　　　　　ADV. NO. **09-1106**

**BRYAN J. WALKER**
**ANGELA J. WALKER**
DEFENDANTS


## MEMORANDUM OPINION

Plaintiff Elodie Bostwick sued to deny Bryan and Angela Walker's chapter 7 discharge, or failing that, to establish that they owed her a nondischargeable debt.[1] The complaint will be dismissed because the plaintiff failed to prove the discharge objection or that the debt is nondischargeable.

## FACTS

Bryan and Angela[2] Walker began building a spacious residence in Denham Springs, Louisiana in 2007. Elodie Bostwick, Bryan's widowed mother, contributed substantial sums to the project because she anticipated living with her son and his wife. Bostwick insists that she loaned the debtors the money they invested in the project. The Walkers respond that neither they nor Bostwick ever intended Bostwick's contributions to be loans.

---

[1] Plaintiff objects to the Walkers' discharge under 11 U.S.C. §727(a)(4) and to the dischargeability of their alleged debt to her under 11 U.S.C. §§523(a)(2) and (4).

[2] The plaintiff in testifying usually referred to co-defendant Angela Walker by the name *Joy*.

Mrs. Bostwick testified that the debtors approached her in mid-2006 about moving into the home they planned to build. Bostwick owned a house in Zachary, Louisiana, but was then living in Houma, where she'd moved to care for another son, Scott, who died in 2005. After Scott's death Mrs. Bostwick was emotionally vulnerable and was unhappy: she had difficulty sleeping, lacked an appetite and also suffered from hypertension. The Walkers discussed a number of living arrangements with Mrs. Bostwick, who was not interested in either buying or building a house near their Port Vincent home. Eventually Bostwick agreed to sell her Zachary[3] property and move into the residence the debtors planned to build in Denham Springs. Bostwick donated[4] her Zachary property to Bryan,[5] who sold it[6] and with Bostwick's permission later applied about $187,000 of the sale proceeds toward the cost of the new house.[7]

The Walkers had bought the Denham Springs lot in July 2006[8] and paid for it with the proceeds of the sale of their home in Port Vincent, Louisiana, money borrowed from Hancock Bank of Louisiana ("Hancock")[9] and part of the sale proceeds from Mrs. Bostwick's home. The

---

[3] The Zachary residence was unoccupied at the time.

[4] June 28, 2006 Act of Donation for property located on Worsham Drive, Zachary, Louisiana (Joint Exhibit 4).

[5] Bostwick granted Bryan her power of attorney on June 27, 2006. General Power of Attorney (Joint Exhibit 6). No party definitively established at trial why the power of attorney was necessary, though the plaintiff stated she thought it was for the sale of the Zachary house. The evidence contradicted that because Bostwick herself donated the house to Bryan, who then sold it. The plaintiff and both defendants testified that Mr. Walker never actually used the power of attorney.

[6] November 10, 2006 Cash Sale (Joint Exhibit 3).

[7] The plaintiff testified that she believed the $187,000 was to be spent exclusively on the part of the Denham Springs house she was to occupy. Bryan Walker denied agreeing to that and neither party offered any written evidence of an agreement or any other documents that tended to corroborate the plaintiff's recollection.

[8] July 27, 2006 cash sale (Joint Exhibit 5).

[9] July 27, 2006 Multiple Indebtedness Mortgage by Bryan and Angela Walker in favor of Hancock Bank of Louisiana, Joint Exhibit 15, bates no. 00098-00102. August 21, 2008 Promissory Note executed by Bryan and Angela Walker in favor of Hancock Bank of Louisiana in the amount of $560,000 (Joint Exhibit 23, bates no. 00231). Hancock also helped the debtors prepare a construction budget, which was not admitted into evidence. The Hancock debt eventually totaled about $550,000.

project met with delays and cost overruns, and by early 2008 the bank limited the construction loan to $508,000 after concluding that the completed house would not be worth what it first had projected.[10]

Bostwick at some point learned that the Walkers were having difficulty paying for the home. She testified that her son had incurred credit card debt of $100,000 and that the couple was "borrowing from everybody." The debtors corroborated her testimony, admitting the house took "everything that could get our hands on," including $43,000 they withdrew from Mrs. Walker's 401(k) plan. Mrs. Walker's loss of her job a few months after the project started compounded the debtors' predicament. Bostwick also knew that the couple was "having trouble" with Hancock Bank and learned from her son that the debtors were even considering whether to "walk away" from the property. According to Bryan Walker, the plaintiff in response offered to pay to continue work on the house because she was intent on leaving Houma.

Bostwick does not dispute that the Walkers needed more money to finish their house or that she willingly gave them over $148,000[11] in addition to the proceeds of her house in Zachary. The Denham Springs home eventually cost about $1,000,000, according to Angela Walker.

Mrs. Bostwick moved into her separate suite at the new home in early April 2008. She described the four-bedroom main residence as "beautiful," saying that it featured amenities including a built-in swimming pool, outdoor kitchen and a three-car garage. Though the outcome seemed to be what all parties anticipated, events proved otherwise. Bryan Walker

---

[10] Bryan Walker believed that cost overruns were a major reason the bank decided not to advance any more money on the construction loan. Angela attributed much of the cost overruns and construction delays to their dispute with Frank's Doors, a supplier.

[11] February 16, 2008 check from Elodie Bostwick to Bryan Walker for $28,000 (Joint Exhibit 9); Regions Bank deposit slips for $110,159.52 and $10,627.65 (Joint Exhibit 19, bates no. 00153). The Regions Bank account had been jointly held by Bostwick and Bryan Walker since shortly after Bryan's brother Scott died, well before the plaintiff gave Bryan her power of attorney.

described the household as happy at first, but the mood changed three or four months after his mother moved in, when Mrs. Bostwick's initial satisfaction gave way to unhappiness and a litany of complaints she repeated at trial.

Her first complaint was that she was forced to secure a post office box because other members of the household were not promptly giving her mail. Exorbitant electrical bills for service to her suite prompted another complaint, although she admitted on cross-examination that a wiring repair cured the problem, which was attributable to improper wiring. The plaintiff also complained that the debtors planned to install a privacy fence between her residence and the pool which the plaintiff said would block the outside light – but in fact they never put up the fence. Bostwick also testified about other "incidents" involving her and the debtors. She offered no specific facts about those complaints though, and offered no evidence that she presented them to the debtors or that the debtors tried to remedy them.

The plaintiff documented amounts she claims to have loaned the debtors and even points to relatively smaller sums she claimed they spent for projects not related to the home. Her calculation took no account of her son's transfers to her during the time she lived with the debtors. Specifically, Bryan Walker made a substantial donation to her on June 30, 2008, just months after Bostwick moved in. Bryan donated the naked ownership of eighty acres of land to his mother, at her request. The property had belonged to Bryan's deceased brother Scott and was subject to a usufruct in Bostwick's favor.[12] Mrs. Bostwick later donated the property to her nephew because she feared, for reasons she did not explain at trial, that her daughter-in-law was going to take it from her.[13]

---

[12] June 20, 2008 Act of Donation (Joint Exhibit 18, Bates no. 00151-152).

[13] August 2, 2010 deposition of Elodie Bostwick (Defendants' Exhibit B, p. 65, ll. 15-25, p. 66, ll. 1-2). The debtors' bankruptcy trustee has sued to recover the donated property under several bankruptcy and state law theories.

4

Given Mrs. Bostwick's growing irritation arising out of her living arrangement, the family understandably went separate ways in time. Bostwick moved out about a year after she'd moved into the debtors' house,[14] and soon afterward the debtors' financial problems culminated in their June 18, 2009 chapter 7 filing. The trustee later sold the home for $640,000.[15]

Bostwick alleges that the debtors are not entitled to a discharge because they made false statements regarding funds the plaintiff provided to them both in their schedules and also at the meeting of creditors. In the alternative, the plaintiff seeks a non-dischargeable money judgment for $187,000 yielded by the sale of her residence in Zachary; $148,000 she gave the debtors to complete their house; and checks Angela Walker wrote on a joint bank account to pay for items unrelated to the Denham Springs house.[16]

## ANALYSIS

*I.   Plaintiff Offered No Credible Evidence to Support Denial of Debtors' Discharge*

Bankruptcy Code section 727(a)(4)(A) commands the court to grant a debtor a discharge unless "the debtor knowingly and fraudulently, in or in connection with the case … made a false oath or account…." To prevail, Bostwick had to prove that:

(1) the debtors made statements under oath;

(2) the statements were false;

---

*Dwayne Murray, Trustee v. Elodie Bostwick,* Adv. No. 11-1056 in the United States Bankruptcy Court for the Middle District of Louisiana.

[14] Bryan claimed that he did not know why his mother moved out, testifying only that she never told him why she was unhappy. Mrs. Bostwick claimed that the debtors "weren't nice to her," according to Angela.

[15] March 11, 2011 Order on Motion for Authority to Sell Immovable Property of the Estate Free and Clear of Liens in case no. 09-10888 [P-259]. The order approving the sale fixed Hancock Bank's claim at $550,000.

[16] Five checks drawn on Bostwick and Bryan Walker's joint Regions Bank account were used to pay expenses not obviously related the home building project: check 1014 for $174.76 payable to "Steve P."; check 1034 for $2,500.00 payable to Bryan Walker; check 1057 for $50.00 payable to NRA; check 3032 for $524.00 payable to First Penn Insurance; and check 3081 for $130.79 payable to Edwin Watts. The checks total $3,379.55 (Joint Exhibit 21).

5

(3) the debtors knew the statements were false;

(4) the debtors made the statements with fraudulent intent; and

(5) the statements related materially to the bankruptcy case.

*In re Pratt*, 411 F.3d 561, 566 (5th Cir. 2005), citing *Matter of Beaubouef*, 966 F.2d 174, 178 (5th Cir. 1992).

The complaint alleges that the debtors are not entitled to a discharge because of statements in their schedules and their testimony at the meeting of creditors that they did not owe Mrs. Bostwick anything, even though she provided substantial sums invested in their new house.

The evidence does not support denial of the Walkers' discharge.

First, Bostwick points to the debtors' sworn testimony at the meeting of creditors allegedly disputing her claim as a false statement. However, plaintiff offered no evidence of the debtors' testimony at the creditors' meeting. Without that evidence it is impossible to determine how the debtors testified and therefore whether their testimony was false.

Second, the evidence does not support a finding that the plaintiff had an agreement with the debtors to repay the money she contributed to build the home. Bryan Walker testified that his mother did not ask the debtors to return any of the money she had contributed to the building of the Denham Springs home until after she had moved out. Mrs. Bostwick's testimony on re-direct examination in large part corroborates her son's: she testified that she did not believe her son would have had to repay the $187,000 from the proceeds of sale of her Zachary home because she intended to bequeath that property to him. This tends to support the debtors' testimony that the plaintiff did not expect repayment from the debtors for at least a substantial part of the total she claims they owe her. The lack of any documentary or other evidence establishing the existence of a loan or other agreement of the debtors to repay any amounts

6

Bostwick provided from the sources other than the proceeds of the sale of her house in Zachary further corroborates debtors' version of the events, and lends credibility to their testimony that plaintiff did not, before leaving the Denham Springs home, expect to be repaid.

The evidence supports a finding and conclusion that the debtors reasonably believed they did not have a duty to repay Mrs. Bostwick and therefore appropriately scheduled her claim as an unsecured debt entitling her to notice of their bankruptcy.[17] Although debtors more properly should have listed Bostwick as the holder of a contingent, disputed and unliquidated claim, nothing about the manner in which they listed her claim, or their resistance to the claim and the plaintiff's efforts to establish its nondischargeability, merits the severe penalty of loss of their discharge.

A debtor must have willfully made a false statement with intent to defraud his creditors to lose a discharge under section 727(a)(4)(A). *In re Townsley*, 195 B.R. 54, 65 (Bankr. E.D. Tex. 1996), *citing In re Bodenstein,* 168 B.R. 23, 32 (Bankr. E.D. N.Y. 1994). Elodie Bostwick failed to prove that the debtors made any false statements or that the statements they made were material, much less made with fraudulent intent. Therefore the plaintiff did not establish by a preponderance of the evidence that debtors should be denied their discharge.

    II.    *Plaintiff Failed to Prove the Debtors Misrepresented Any Facts to Her*

        a. The debtors did not misrepresent any facts to induce Bostwick to provide additional funds.

Bankruptcy Code section 523(a)(2)(A) bars discharge of debts obtained by "false pretenses, a false representation, or actual fraud …." To succeed under 11 U.S.C. §523(a)(2)(A), Bostwick as the objecting party had the burden of proving that: (1) the debtors made

---

[17] The debtors assigned no value to Bostwick's claim though they failed to list it as disputed, contingent or unliquidated. 11 U.S.C. §101(5)(A), Fed. R. Bankr. P. 1007(b).

7

representations; (2) at the time they were made the debtors knew they were false; (3) the debtors made the representations with the intention and purpose to deceive Bostwick; (4) Bostwick relied on the representations; and (5) Bostwick sustained losses as a proximate result of the debtors' representations.  *RecoverEdge L.P. v. Pentecost*, 44 F.3d 1284, 1293 (5th Cir. 1995); *In re Bercier*, 934 F.2d 689, 692 (5th Cir. 1991).

The first element of proof on any nondischargeability claim is the existence of a debt. The plaintiff did not prove that the debtors agreed to repay her any of the money she provided to them; thus, she has not proven a debt.  However, even assuming that the debtors agreed to repay Bostwick all or part of the money she contributed to their project, the plaintiff still failed to prove that the debtors induced her to give them the money by misrepresenting any facts to her.

The debtors' construction project proved too costly in light of events occurring after construction began, including a work stoppage triggered by the debtors' dispute with a supplier. Faced with this, Bryan Walker told his mother that they had "lost everything," were unable to finish the house and were considering "walking away" from the project.  Bryan Walker claimed that his mother offered them the money to finish the house when they explained that they faced the prospect of not completing it, and specifically disputed his mother's claim that the debtors asked her for money to continue the work.  Angela Walker corroborated that the couple told Bostwick that the house was a "lost cause."  Bostwick herself even testified that she knew the debtors had exhausted their financial resources.  Given that concession, it is implausible that the Walkers agreed to borrow even more money from Mrs. Bostwick or agreed to repay her.  The plaintiff's claim that they did so is not credible considering all the evidence.

The evidence established that the Walkers built a comfortable house – it may be described fairly as luxurious.[18] Bostwick moved into the part of the house built to accommodate her but after a time became dissatisfied with the arrangements for reasons that remain vague. The evidence established that Mrs. Bostwick left the house because of what she imprecisely characterized as the debtors' "not treating her right" and "not being nice to her."

The Walkers did what they told Bostwick they would do: they built a comfortable home with separate quarters for her. No evidence supports a finding that they misrepresented any facts to Bostwick or misled her to induce her provide funds to complete the house.

> b. The debtors' alleged failure to disclose their separate property regime and the donation of the home to Angela Walker are not material.

No evidence established that Bostwick told the debtors before she gave them any money that she was providing the funds on condition that Bryan owned the property. Moreover, no evidence supported a finding or conclusion that the Walkers entered into either the matrimonial agreement or the donation for any improper purpose, or to spite or disadvantage Bostwick.

The credible evidence does not establish that Mrs. Bostwick would have dealt any differently with the debtors had she known they were separate in property when she gave them money to help complete the house. Additionally, the debtors' matrimonial regime makes no difference to the outcome of this dispute: no party offered any evidence that Mrs. Walker made a competing claim to the property to the prejudice of Mrs. Bostwick. In any case, the Walkers remained married at the time of bankruptcy. Neither debtor retains an interest in the house, which the chapter 7 trustee sold to satisfy creditors' claims.

---

[18] An appraisal of the home including photographs was admitted as Joint Exhibit 26, Bates no. 00291-319. Photographs of the home comprise Joint Exhibit 22.

The plaintiff invites the conclusion that her quarrel with debtors is premised on the way in which she came to advance money to complete their home. The evidence suggests otherwise, and supports a finding that Bostwick only sought to recover money from the debtors when she learned of their marital property arrangement.

After Mrs. Bostwick moved out of the Denham Springs house, she discovered that her son and his wife were separate in property and also that Bryan Walker had donated his interest in the home to his wife.[19] The plaintiff testified that the debtors never disclosed to her that they had established a separate property regime under Louisiana Civil Code article 2328. She insisted that the debtors told her that the home would remain Bryan's property if the couple ever divorced. She also repeatedly testified that she never would have provided funds for the project had she known the Walkers were separate in property and that the planned home was to belong to Angela Walker and not Bryan.

On redirect examination, Mrs. Bostwick insisted that her son and her daughter-in-law lied to her about the true ownership of the home, though she directed her harshest criticism toward her daughter-in-law, saying "If Bryan lied to me, it's because he's listening to her."

Bryan Walker testified that he entered into the separate property agreement on his lawyer's advice, because he had been married before marrying Angela Walker. At his attorney's recommendation he also donated his interest in the Denham Springs property to Angela to ensure that it remained his wife's property free from claims of his heirs should he pre-decease her.[20]

---

[19] After she left the house Mrs. Bostwick hired an abstractor who discovered that the house was Angela's separate property (Abstractor's Certificate, Joint Exhibit 15, Bates no. 00091). The abstract included a June 11, 2003 Matrimonial Agreement (Joint Exhibit 15, Bates no. 00093-94) and the November 9, 2006 Donation and Declaration by which Bryan Walker donated the Denham Springs lot to Angela Walker (Joint Exhibit 15, Bates no. 00108). No party established what prompted the plaintiff's concern about the Walkers' marital regime or her reason for commissioning the title research.

[20] Bryan Walker is twenty years older than his wife. He did not identify heirs with a potential claim to any of his property.

10

Silence regarding a *material* fact can constitute a false representation for purposes of 11 U.S.C. §523(a)(2). *In re Acosta*, 406 F.3d 367, 372 (5th Cir. 2005). The plaintiff did not prove that either debtor failed to disclose any material facts constituting a misrepresentation within the scope of section 523(a)(2). Bostwick has not established that her claim against the debtors is not dischargeable based on their failure to disclose to her their separate property agreement or Bryan's donation of his interest in the house to Angela.

> III.    *Plaintiff Did Not Prove that the Debtors Committed Fraud or Defalcation while Acting as her Fiduciary*

Bostwick also failed to establish that her claim against the Walkers is a non-dischargeable defalcation by a fiduciary under 11 U.S.C. §523(a)(4).

First, no evidence established that Angela Walker was Bostwick's fiduciary. Thus, Bostwick's claim against Angela Walker fails as a matter of law.

Second, the plaintiff has not proven that Bryan Walker committed a defalcation as a fiduciary.

Bryan Walker was the plaintiff's agent and attorney in fact, or *mandatary*. Louisiana Civil Code art. 2989. Bryan Walker as Bostwick's mandatary owed the plaintiff a fiduciary duty. *D&J Tire, Inc. v. Hercules Tire & Rubber Co.*, 598 F.3d 200, 207 (5th Cir. 2010), citing *Sampson v. DCI of Alexandria*, 970 So.2d 55, 59 (La. App. 3d Cir. 2007).

However, all parties agreed in their trial testimony that Bryan never used the power of attorney on his mother's behalf. Bryan did not exercise the power of attorney for the sale of the Zachary property because Mrs. Bostwick herself donated that house to her son, who then sold it as his own property. Moreover, Bryan Walker and Bostwick had jointly owned the Regions Bank checking account since some time after his brother Scott's death in 2005. The plaintiff has

11

not pointed to any law supporting a conclusion that a fiduciary relationship existed between Bostwick and Bryan Walker simply because they were joint bank account owners.

Bryan Walker himself co-owned and controlled, with his mother, the funds in the Regions joint account at all times relevant to this dispute. Consequently, Bryan's allowing his wife, Angela Walker, to write checks on the joint account to pay items that may not have related the construction project is not a defalcation by a fiduciary.[21] Bostwick's claim that the use of those funds created a nondischargeable debt under 11 U.S.C. §523(a)(4) is meritless.

## CONCLUSION

No evidence supports a finding that anything the debtors said to Elodie Bostwick, did to her, or allowed to happen to her obligated them to repay Bostwick the money she gave them to help build the Denham Springs home. Accordingly, their resisting liability on the claim does not merit the severe penalty of denial of their discharge.

However, even if the debtors had agreed to repay Bostwick, no evidence established that the debtors misrepresented any facts to induce the plaintiff to provide the money, and thereby render the debt nondischargeable.

Finally, as a matter of law Angela Walker was never Bostwick's fiduciary, and the evidence does not support a finding or conclusion that Bryan Walker committed a defalcation as Bostwick's fiduciary under 11 U.S.C. §523(a)(4).

For these reasons, plaintiff's complaint will be dismissed.

Baton Rouge, Louisiana, February 2, 2012.

**s/Douglas D. Dodd**
DOUGLAS D. DODD
UNITED STATES BANKRUPTCY JUDGE

---

[21] Defalcation is defined as "a willful neglect of duty, even if not accompanied by fraud or embezzlement". *In re Davis*, 3 F.3d 113, 115 (5th Cir. 1993).